522-0606 W.C. Amron, Illinois Co. v. Illinois Workers' Compensation Comm'n et al., Ricky A. Duncan, Appley v. David Nelson This court is well aware of the background and evidence in this case, having rendered a prior analysis on the evidence. That opinion was withdrawn when Mr. Nelson, only after receiving that adverse opinion, brought up a jurisdictional challenge. So now we're back to where we were before, back then, and I would submit to you that nothing has changed on this case since this court rendered its initial decision. The only change since the last time we were here is a directed decision from the Illinois Workers' Compensation Commission based on a mandate from Judge Katz. The original appeal from Judge Katz relating to the original decision is still before you. I cited the Stockton case on point as to a basis for that. Nothing cited by Mr. Nelson changes that. Therefore, it's our position, and it's supported by the law, that the initial decision from Judge Katz needs to be addressed first. It is still before this court. It is our position that only after that do you get to the second decision, which, if this court should hold to its previous analysis, would render the second decision moot. What Mr. Nelson would have this court do is basically ignore Arbitrator Lee, who tried the case, who assessed the credibility of the witness. Credibility of the witness is a key factor in this case. He would have you ignore the initial Workers' Compensation Commission decision, which was unanimous, affirming Arbitrator Lee. He would have you ignore your previous analysis, all of that because Judge Katz, in our view, substituted her decision for the Illinois Workers' Compensation Commission. If you were to accept this premise, then one might ask the question, why do we try cases? Why do we have the Illinois Workers' Compensation Commission? I've been practicing in Illinois for 40 years, primarily with workers' compensation. I've tried well over 100 cases. I've been up to the appellate court seven or eight times, primarily on questions of law, once or twice on questions of fact, and there's a reason for that. This court has consistently held that the arbitrator and questions of credibility of the Illinois Workers' Compensation Commission has given deference to findings of fact. That's the only issue before this court is whether the initial decision of the Arbitrator Lee and the Workers' Compensation Commission was in accord with the manifest weight of the evidence, and it's clear that it was. If a single circuit court judge can take away all of the efforts of the arbitrator and the Illinois Workers' Compensation Commission, then again, what does the Compensation Commission matter? Nothing has changed, nothing in terms of substantive developments on this case, nothing in terms of the evidence has changed since we were last here. So I am asking, before I ask you for my specific remedy, I do want to comment on Mr. Nelson having the position that there should be a switched standard of review here because we're also incorporating the second decision. I disagree with that. I don't think it's, I don't think this court should abide his effort to switch the burden of review, the burden as to the standard on review. We still have the initial threshold issue, that is the initial appeal from Judge Katz on which this court has previously provided its same analysis in reversing the initial order from Judge Katz and reinstating the initial decision from the Illinois Workers' Compensation Commission. That's the only decision before you that was premised on an independent review of the facts. Thank you. If there's any questions, I'll be glad to address them. Any questions from the court for Mr. Lent? No? Okay. Mr. Nelson, you may respond. Thank you, Your Honor. May it please the court, counsel, good afternoon. My name is Dave Nelson, I represent Mr. Duncan Dieppoli. This court should affirm the recent decision of the circuit court for three reasons. First, as a matter of law, this court must focus its review on the second most recent decision of the commission, one dated April 2022. Give it the deference it is due and conclude the decision is not against the manifest weight of the evidence. Are you suggesting that we review the second decision before we review the first decision? I exactly that, Justice Hoffman. Yes, sir. If the first decision was in error, then the only thing we do is we vacate the second decision by the commission and reverse the second decision by the circuit court. I mean, the cases are clear. When you have a remand and a decision comes up on remand, the first thing we do is we review the original decision to find out if it was correct. I mean, you're just wrong when you suggest that we somehow review the latter decision first. The latter decision is premised upon a commission decision that it was ordered to make. Now, the question is, were they correct the first time or weren't they? I mean, it just doesn't make any sense to review the latter decision first. Justice Hoffman, I'm sorry, Judge. I'm sorry. Go ahead. Thank you, Your Honor. I didn't mean to catch off. I apologize. Well, Justice Hoffman, I take seriously the words of the decision of F&B Manufacturing that you signed on to Justice McCullough writing and also of Gilster Mary Lee, which was decided in the same year, which was 2021, also authored by Justice McCullough. I'm certainly aware that Presiding Justice Holdredge was on that decision as well. That case, as the justices are aware, was decided in the light of, really in the shadow of, my brief, which decision of Freeman United, of course, I had some pretty strong, I'm sorry, I didn't mean to. Okay. Which has some pretty strong words about whether you look at the first or second commission decision in a situation like this one, which situation, which circumstances obtaining are that the first decision goes one way, the second decision of the commission goes another way. That decision reads, to accept the appellate court's position, and it's the position that you're stating right now, Justice Hoffman, to accept the appellate court's position that you should look at only at the first one first would require us to hold in effect that the commission's initial factual determination is entitled to greater deference than the factual determination it made following the remand to the circuit court. We know of no principle of logic or judicial review. You may be entirely correct, sir, as to factual determinations, but you're totally incorrect on the question of whether we have to first decide whether the initial reversal was correct. That means was the initial decision against the manifest weight of the evidence. Now, if we determine that the original circuit court decision was correct, the case goes back to the commission on remand and now goes up on appeal again. Now we're looking at the second decision after we've determined that the circuit court was correct in its first decision. I think, I cannot say it any better, Justice Hoffman, and I know it, I know that you are rehearsing for me slowly because I'm a bearer of small mind, that your words in that decision are that you must assess the propriety, that's the word used by the court, the propriety of the circuit court's first decision. And I agree completely and that is my position today, and you should. And when you do, you will find it's not improprietous. Judge Katz's decision was sound. It did two things. Judge Katz's decision pointed out to the commission and the arbitrator below that the analysis on medical causation regarding pre-existing condition was flawed. That's on page 28 of her decision. Now, I will grant freely and quickly that the decision is couched in terms of manifest weight of the evidence, but the problem she points out is a problem with pre-existing condition. This petitioner put on evidence of all three means of prevailing, of proving medical causation, direct evidence through either the records or the testimony of a total of four doctors, all of whom agree about diagnosis and disability, four versus one. We also put on evidence of pre-existing condition testimony. That was the evidence from the deposition of Dr. Tudor, the pulmonologist at Wash U. And it was that that Judge Katz said the commission got wrong. The third kind of evidence that we put on was chain of events evidence. I know you're aware of that. So there's the problem, initially the problem of pre-existing condition medical causation analysis. And then secondly, and perhaps more broadly, certainly more ink is spilled on this, on the process of reviewing the evidence problem. And what I'm getting that there is by way of example, Dr. Piricelli. Dr. Piricelli was a disability doctor hired by Amron to review his, his Mr. Duncan's status. She saw him twice. She examined him twice. She did a record review. Dr. Piricelli agreed with the treating, the two treating pulmonologists, Tudor who testified and Anderson who had inherited the case after Dr. Tudor retired. Dr. Piricelli not only agreed with the diagnosis, agreed, she also agreed with the disability status in those two reports that were submitted into evidence. And here's the punchline completely ignored without explanation by the arbitrator and commission never mentioned once. Now, these are thorough and robust reports that they, they ought to get a nod. I have, I would not be in front of this panel today arguing well, as, as by the way, the circuit judge in Randolph County did in the Gilster Mary Lee case, judges, justices Hoffman and Holdridge, the ones you sat on you, the two of you and your decision written by judge, justice McCullough said, you know what judge Goodwin sitting down there, he just looked at the depositions of Dr. McCullin and Dr. Cost McMullin and Dr. Costin and, and reweighed the evidence. And, and that's not what you're supposed to do. And you were right then justice judge Katz was right when she said repeatedly, the errors in this evidentiary review are terminal. It's okay to weigh one doctor's testimony more than the, as having more weight or more persuasive as another, but you, it's not proper to simply ignore it altogether. Similarly, to take a second example on strumming the same tune here, when the arbitrator says, I'm going to put more weight with Dr. Hires, the IME from Ameren, the one that stands alone versus the other four. And the reason is Dr. Hires had the records from Dr. Roth, the treating doctor and Dr. Tudor didn't, he didn't have those records, but in fact, Dr. Tudor did Dr. Tudor testified at his deposition at length. Oh my gosh, your honors. It was like an hour of testimony about medical records back to 1999. We talked about asthma in spades. We talked about everything under the sun. So it would be okay. If that arbitrator said, look at it's my call more weight is going to be given to Dr. Hires than Dr. Tudor. That's their job for sure. But it would be improper if the reason for getting, giving the extra weight is a, is a factual error. The arbitrator's decision, which is to say the commission's decision says there's one reason we're giving more weight to Hires. He had the documents and Tudor discussed those documents at length. So Dr. pardon me, judge Katz's review of the commission decision in which she criticizes the application of preexisting law in which she points out to problems of process in reviewing the evidence. That is exactly justice Hoffman. I think the kind of propriety that your decisions say you have to look at. And of course I'm here arguing before you, that was an appropriate thing to do at that point. It's appropriate. It makes good sense. This court should only review the very best and most apparatus just largely beside the point. Remands aren't pointless and this court should concern itself only with reviewing the collective wisdom of those decisions below, which is what you have in the second commission decision. Now, your honor, have I answered that question or, or dodged it in as the case may be? Well, you, you, you gave an answer. That's the question. Thank you. Do you have a followup to what I've said or would you like me to proceed? No, go ahead. Well, I'll ask, I'll ask, uh, what's the proof that the first decision of the commission was against the manifest evidence. What's your best argument for doctors to one that's the bumper sticker for doctors to one. Okay. Let's go up beyond the bumper sticker a little deeper. Sure. Is that because of the records? Are you saying, is it, are you indicating the records with regards to the IME doctor versus tutor or is there more? Well, there's more. Yes, sir. Thank you. So, so you've got tutor who doesn't just examine, but he treats tutors, a full professor of pulmonology at WashU. He's published and he talks about how this is his, this is his love, the industrial exposures that deposition speaks for itself. He retired. And that is, can, that is a, uh, that's a position that's filled. Uh, the role of treating pulmonologist is filled by Dr. Anderson, Dr. Anderson, also professor at WashU and same diagnosis, which is different than the IME, Dr. Hires and never ever makes a diagnosis of asthma. Now I'm, I'm jumping ahead a little bit, but perhaps the court is familiar with the significance of asthma, but hires is the only person that says he's got asthma. The family doctor in whom the, in whose records the word asthma appears those times as set forth in my and for the reasons she says, this is not asthma. She, her, she is deposed. She talks about the history before and the history after. And it's very plain to her that this is a watershed for Mr. Duncan. This is a guy that didn't work, didn't miss work for 20 years, except when he had a minor heart surgery, even passed a kidney stone at work. And after this, he can't work again. He is on oxygen, continuous oxygen prescribed by Dr. Anderson, whom I just mentioned moments ago. And he is taking as the testimony at trial records, he's, he's on his fifth albuterol treatment of the day. By the time we get to trial in 2018, that is not this gentleman's condition. When he goes down to him down into that ditch in 2013, justice Kavanaugh, it's not close. And there is no explanation for a natural history of asthma quiescent at best. Please consider carefully those medical records leading up to this event in 2013, to suddenly, to precipitously blossom into the kind of disability that prevents a guy from showing up at work at all, at all. That's the, that's a longer argument, justice Kavanaugh. I, if, if I'm not stopped, I'll keep going, but I'm aware that it's red. You, you do have the red light, Mr. Nelson. So I want to thank all of you as you, as the court is aware, Mr. Duncan recently passed. And though his legal path was a very long one, he never lost faith in the system and he, his widow, and I thank you for your consideration very much. Thank you, your honors. Any questions from the court for the questions? No. Okay. Thank you, Mr. Lemp. I submit the only question as a is that the initial decision is still before this court. That's the only question of law here. Other than that, it's a question of fact. And Mr. Nelson's recitation of the evidence is quite lacking. Dr. Roth did diagnose as symptomatic asthma for which prescriptions were steady for 10 years prior to the initial exposure. After the initial exposure, he missed a couple of days, continued to work full duty. Co-employee who actually cleaned up the, the substance to which they were exposed had no problems. Dr. Tudor did not have the records at the time he made his initial determination. And in fact, on a credibility issue, Ricky Duncan denied to Dr. Tudor that he had pre-existing asthma when clearly he did. So it's not four doctors against one. And Dr. Purcelli is irrelevant because she just rendered a disability determination for non-occupational benefits. So Dr. Purcelli is irrelevant. Dr. Roth's records support our argument. Dr. Hires testified as to why this man returned to baseline as to the oxygen. That was many years later, which Dr. Hires indicated would have been a natural progression of the events because asthma is progressive. So Mr. Nelson, I think, tries to retry the case before this court. That's not this court's role. That's what you have told us many times, those of us who practice in the workers' compensation field. And again, to Justice Hoffman's questions, the cases cited in which he made the decisions are distinguishable from Stockton. Stockton is not distinguished and Stockton stands for the cases before this court and it should be the initial determination. And that initial decision from the Workers' Compensation Commission, despite Mr. Nelson saying there was a solid opinion the second time around, there was not. The second decision from the Illinois Commission stated at the very beginning, in accord with the directive from Judge Katz, we decide. And they didn't render any independent analysis on causation. The only factual determination on causation before this court, the only independent factual determination is the original commission decision. And that was the one at the initial review before this court that you determined it was in accord with the evidence, it was not against the manifest weight of the evidence. In the interest of consistency, that should be your decision this time as well. And that's all I have unless there's any further questions. Any further questions from the court? No? Okay. Thank you, counsel, both for your arguments in this matter this afternoon. It'll be taken under advisement and a written disposition shall issue. At this time, the clerk of our court will escort you out of our remote courtroom. Have a good afternoon.